A. J. SIMLER, Appellant,

v.

Leslie L. CONNER and Phillips Petroleum Company, a corporation, Appellees.

No. 7822.

United States Court of Appeals Tenth Circuit.

Oct. 11, 1965.

Rehearing Denied Nov. 24, 1965.

John B. Ogden, Oklahoma City, Okl., for appellant.

Phil E. Daugherty and Paul C. Duncan, Oklahoma City, Okl. (Leslie L. Conner, James M. Little, Irvine E. Unger-man and Leslie L. Conner, Jr., Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, BREITENSTEIN and HILL, United States Circuit Judges.

HILL, Circuit Judge.

This declaratory judgment action was brought below by appellant, Simler, against appellee, Conner, asking the court to fix and determine attorney fees, due Conner from Simler, under a contract between the parties. The trial court, after a jury had been waived, made such determination and Simler has appealed. The litigants are not strangers to this court, as this case is only a part of the final chapter in a long story of litigation in the State Courts of Oklahoma and the Federal Courts. To put the present controversy in proper perspective, a brief history of the litigation must be recounted.[1]

Birdine Fletcher, a sister of Simler, died testate in Oklahoma in 1952. By the terms of her will, Simler, who otherwise would have inherited the entire estate as her only heir at law, received "$1.00, this amount and no more." All of her property, which was very substantial, was left to strangers. Simler employed Conner in July, 1952, as an attorney to contest the will. This employment is evidenced by two letters, one dated July 18 [2] and the other September

---

1. See the trial court's findings of fact in Simler v. Conner, D.C., 228 F.Supp. 127, for detailed history of the litigation.

2. "July 18, 1952.
   "Mr. Leslie L. Conner, Atty., 410–414 Hightower Bldg., Oklahoma City, Oklahoma.
   "Dear Sir: Re: Birdine Fletcher Estate, County Court, Oklahoma County, Oklahoma.
   "This confirms our employment of yourself and law firm to represent us in the matter of the Estate of Berdine Fletcher, deceased, now pending in the County Court of Oklahoma County, Oklahoma, wherein certain people have filed petition to probate an alleged will supposed to be signed by her.
   "We agree to pay all the witness fees, court costs, furnish all bonds, purchase copy of all records from court reporters, prepare the evidence and pay all necessary bills to contest the admission of this will to probate because we do not believe it is a valid will. We understand that this will run in the approximate neighborhood of $1,000.00.
   "We also agree to pay you and your firm a reasonable attorney fee for the services rendered and to be rendered in this case and in the County Court and if necessary, in the District Court and if necessary in the Supreme Court of the State of Oklahoma, which fee may be set by the County Court or any other court if the matter is successful either by trial or judgment or compromise.
   "If the matter is not won, compromised or settled, you are not to charge us a fee.
   "Yours truly,
   "/s/ A. J. Simler
   "A. J. Simler, for himself and his children."

25,[3] in 1952. The validity of the will was thereafter unsuccessfully contested in the County Court of Oklahoma County, the District Court of that County and the Supreme Court of Oklahoma.[4] In October, 1952, while the attack upon the competency of the testatrix, as it effected the validity of the will, was being litigated in the state courts, Conner conceived the legal theory that the foreign corporations named as devisees and legatees in the will could not take title to the property in the estate because of a provision in the Constitution of the State of Oklahoma. He then filed a diversity suit in the United States District Court for the Western District of Oklahoma on behalf of Simler against the executor of his sister's will and the foreign corporations on this theory. After adverse judgments in that court, Conner and his associates appealed the case to this court, obtained a reversal of the district court thereby procuring the entire estate for Simler, as the sole heir at law of the decedent.[5] A petition for certiorari was eventually denied by the Supreme Court and soon thereafter distribution of the entire estate to Simler began.

■ By the very nature of the action Simler acknowledges that Conner and his associates in the litigation are entitled to an attorney fee. The only question presented here is whether the attorney fee fixed and determined by the court below is a reasonable one. At the outset of our determination we are confronted with the uniformly accepted doctrine that a judgment of a trial court will not be disturbed upon appeal unless it can be concluded that the material findings of fact are clearly erroneous or that the trial court has erroneously applied the law.[6]

The trial court determined that a reasonable contingent attorney's fee for all of the legal services rendered by Conner and his associates to Simler to be 50 per cent of the June, 1957, value of the property recovered. And further that the 50 per cent should be reduced to 36 per cent because of a settlement made between Simler and one of the associates, whose share of the total fee was to be 14 per cent.

■■ In determining a reasonable attorney fee some of the factors to be given consideration are: (1) Is the fee to be a contingent one; (2) how much is involved in value in the matter; (3) what benefit has accrued to the client; (4) what degree of professional skill and experience was displayed by the attorney; and (5) what amount of time and expenses were spent by the attorney on the matter.[7] Also, the allowance of attorney fees is generally a matter within the sound judicial discretion of the judge and an appellate court is not warranted in overturning the trial court's judgment

3. "Mr. Leslie L. Conner, Conner, Hilpirt & Britton, Attorneys and Counsellor at Law, 410–414 Hightower Building, Oklahoma City, Oklahoma.

"Dear Sir: With reference to my letter of July 18, 1952, employing your firm in the Fletcher Will and Estate Contest, I agree that the reasonable fee is:

"25% of the amount recovered if settled without trial.

"33% of the amount recovered if case is tried in County and District Court.

"50% of the amount recovered if the case is appealed to the Supreme Court.

"I understand that all expenses, taxes and costs are to be deducted first.

"This is a contingent fee and if nothing is recovered, no fee is paid.

"If anything is recovered or settled, I agree to pay you the above fees.

"Yours truly,

"A. J. Simler"

4. Simler v. Wilson et al., 269 P.2d 349.

5. Simler v. Wilson, 10 Cir., 210 F.2d 99, cert. denied 347 U.S. 954, 74 S.Ct. 681, 98 L.Ed. 1099, rehearing denied 347 U.S. 973, 74 S.Ct. 786, 98 L.Ed. 1113.

6. Walker v. Wiar, 10 Cir., 276 F.2d 39; Rule 52, F.R.Civ.P.

7. Wyoming Ry. Co. v. Herrington, 10 Cir., 163 F.2d 1004; Miller et al. v. Burkett, 191 Okl. 521, 130 P.2d 996; Driver v. Tolstornog, Okl., 358 P.2d 1108; 7 C. J.S. Attorney and Client § 191, p. 1080.

unless under all of the facts and circumstances it is clearly wrong.[8]

Expert testimony was adduced at the trial and from such testimony on behalf of Conner we have no hesitancy in holding that there is ample evidence in the record to support the court's allowance of a 50 per cent total fee as a reasonable one. Two experienced, qualified and outstanding members of the Oklahoma Bar, Mr. Paul Brown and Mr. Gus Rinehart, testified as experts for Conner. Both witnesses possessed a knowledge of the nature and extent of the litigation involved and unequivocally fixed a reasonable fee at 50 per cent of the value of the property recovered. Even one of appellant's expert witnesses fixed a reasonable fee in the case at 50 per cent and appellant's other expert acknowledged the fine quality of the legal services rendered. In addition, one of the exhibits, which is set out in full at footnote 3, a letter from Simler to Conner written at the inception of the litigation, shows an agreement by Simler to pay a 50 per cent fee based on the amount recovered. The parties agreed that this letter would not be relied upon by Conner as determinative of the fee to be allowed but it was admitted into evidence and shows that Simler was agreeable to a 50 per cent fee at that time and that he apparently did not consider such a fee excessive. It should also be noted that the balance due Conner is not to be paid in cash immediately but will be paid from 36 per cent of the oil payments accruing monthly from the farm. From the trial judge's opinion it is evident that, in addition to the exceptional factual situation presented, he gave consideration to all of the factors set forth above and to the Canons of Professional Ethics adopted in Oklahoma. Title 5, Chapter I, Appendix 3, Oklahoma Statutes, 1961. Oklahoma, by statute, expressly authorizes 50 per cent contingent attorney fees. Title 5, § 7, O.S.A. Cases approving 50 per cent contingent fees are too numerous to be set forth here, but all of the cases on the reasonableness of attorney fees teach that the particular facts of each case must determine what a reasonable fee will be. It should also be pointed out that appellant, after receiving the fruits of appellee's skilled legal efforts, did not choose to fully compensate appellee but brought this action instead. That has been eight years ago and appellee has been deprived of the use of his well earned fee, or of interest upon the money he was entitled to, for that period of time. Clearly, the evidence in this case supports the findings of the trial court.

The trial court, after determining that 50 per cent of the value of the property obtained was a reasonable attorney's fee, then proceeded, under the evidence, to fix a value of the property as of June 1, 1957, the date of the completion of Conner's services. The property obtained for Simler through this long series of lawsuits consisted of a quarter section of land, subject to an oil and gas lease, with sixteen producing oil and gas wells thereupon and accumulated oil and gas runs therefrom. The trial court put a value of $12,000 upon the surface rights of the quarter section and a value of $779,480 upon the proved primary and secondary oil and gas reserves and undeveloped oil and gas reserves above a 6400 foot level below the surface. Apparently, no question is raised as to the value of the surface rights to the farm but appellant attacks the oil and gas valuation and says that the trial court used speculative and unreasonable figures in arriving at this valuation figure. We have carefully read all of the expert testimony adduced at the trial and do not agree with appellant. Again it is our view that this finding of the trial judge is amply and sufficiently supported by the evidence.

In regard to this valuation, the evidence shows that this 160 acres is part of a unit consisting of 3700 acres with

---

8. United States v. Anglin & Stevenson, 10 Cir., 145 F.2d 622, cert. denied 324 U.S. 844, 65 S.Ct. 678, 89 L.Ed. 1406.

5.37 per cent assigned to it as its share of production from the entire unit. Even though the wells on the Simler land go dry the owner will be entitled to share in production from the entire unit. Simler has either received or has become entitled to receive more than $382,000 from oil and gas runs from this farm since acquiring the title to it and the undisputed evidence further shows that the property, since 1952, has produced income in excess of $475,000.

Appellee's two expert witnesses placed June, 1957, values on the oil and gas reserves at $779,433 and $627,893, without giving any particular value to the unexplored horizons under the land. The evidence also showed that the right to explore unexplored horizons below 6400 feet has considerable value.

■ Appellant puts stress upon the pretrial proceedings and order to support his contention that the judgment, as rendered, violates what the parties had agreed upon.[9] We find no merit to this contention. It is true that the parties agreed that Conner would not be given an interest in the property in payment of any fee due him. The judgment is in keeping with this agreement but it does properly give Conner a lien upon 36 per cent of Simler's interest in the minerals and mineral rights above 6400 feet until the full amount due Conner is paid.[10] By the judgment, Conner is expressly precluded from any interest in the mineral rights below the 6400 feet horizons, except that his lien would apply to production from these horizons if such be had. We do not believe that this lien provision violates the pretrial agreement or order, because it gives Conner no ownership in the land or mineral rights. The lien is consistent with the colloquy had between court and counsel at the pretrial conference.[11]

9. The findings of fact show the following:
   "* * * At pretrial conference it was stipulated by the parties and their attorneys that defendant would not rely on the contract of September 25, 1952, but that the contingent attorney's fee should be fixed by the Court, without a jury, to be paid in money only, and that Conner and his associates relinquished their rights to any interest in the real estate above described and the oil and gas production therefrom, except as hereinafter stated."

10. Title 5, § 6, O.S.A. expressly provides for an attorney's lien for services in Oklahoma.

11. At the pretrial conference on December 17, 1963, the following discussion was had:
   "The Court: Well, I want you to understand and I want him to understand that if you do that, that the Court, in fixing a cash fee for these lawyers, will have some determination of reserves to determine the amount of probable production dollar-wise from that property.
   Mr. Ogden: Yes, sir.
   The Court: And go from there to determine the amount of cash they are to receive, and fix the lien upon that payment.
   Mr. Ogden: Yes, I know he—I know to protect their fee, whatever judgment.
   The Court: To protect their fee down through the time until it's paid, and when

it's paid, why, he's got his farm free of any payment, and then you should figure that that payment should be based on a certain percentage of the earnings, because he's going to want some of it, probably himself. What do you say about this, Mr. Duncan."
   Then at a pretrial conference on December 27, 1963, there is another mention of a lien:
   "Mr. Ogden: Your Honor, on that case I'd like to be positive—I think I am, but that I understand this. Now since I talked to Your Honor the other day in the courtroom when we had the pretrial, I've gone to Little Rock, North Little Rock and talked to Mr. Simler, and 1 told him and I think this is correct that if we waived a jury in this case, the Court would not consider the second letter, or any interest in his property, but only fix a reasonable lawyer fee in money. Is that the understanding you people have?
   Mr. Little: Yes, sir, that was agreeable with us if they waived a jury and that you could set a cash fee to be paid out of what's accumulated and then if it was more than what's accumulated to be paid as it accrued from the farm, and that we would not claim any interest as such in the minerals or the surface of the farm.
   Mr. Ogden: We understand—
   Mr. Little: We'd like it to be secured on the payment of any fee."

Appellant complains about the trial court's use of the date, June, 1957, in fixing the value of the property acquired. We agree with the trial court. The date used was the actual time when appellant came into possession of the property by distribution from the estate. He further urges that the judgment is indefinite and with that argument we do not agree. We will not set out the judgment here or unduly lengthen this opinion by attempting to summarize it because it is fully set out in the trial court's published opinion, Simler v. Conner, supra. We have carefully read it and conclude that it is definite, clear and unambiguous.

We have very carefully considered the entire record before us and agree fully with the trial court's disposition of this long pending litigation. The allowance is not unconscionable and is clearly within the bounds of the evidence that was before the trial judge. He certainly did not abuse his discretion in the matter.

Affirmed.